# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WALKER, Minors.

UNPUBLISHED
July 12, 2016

No. 330281
Oakland Circuit Court
Family Division
LC No. 14-819841-NA

Before: JANSEN, P.J., and FORT HOOD and BOONSTRA, JJ.

PER CURIAM.

Respondent, the father of three minor children, JSW, KRW, and BMW, appeals by right the order of the trial court terminating his parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January of 2014, Lapeer County Sheriff's Department executed a narcotics search warrant on the home occupied by respondent, the children's mother,[1] and two minor children (JSW and KRW).[2] Officers found marijuana and marijuana paraphernalia, as well as syringes and a digital scale, in the home and accessible to the children. Both parents had punctures and bruising on their arms and admitted to snorting heroin. Children's Protective Services (CPS) substantiated an investigation in February of 2014 regarding respondent's threatened harm to and physical neglect of the children. In March 2014, two felony warrants were issued for respondent, alleging fourth-degree child abuse and maintaining a drug house. Also in March, respondent tested positive for both marijuana and heroin. Respondent was arrested on the felony warrants on April 9, 2014.

Petitioner filed a petition alleging the above facts, and the children were removed from the home on April 10, 2014 and placed with their maternal grandmother. The trial court held a preliminary hearing April 11, 2014. Respondent was incarcerated but participated by telephone.

---

[1] The children's mother was a party to the proceedings below, and her parental rights were also terminated by the trial court. She is not a party to this appeal.

[2] BMW was born prematurely on July 2014, and tested positive for marijuana and opiates at birth.

-1-

The hearing was adjourned until May 12, 2014 in order to resolve whether the children had Native American heritage. The trial court authorized the petition after the May 12, 2014 hearing. Although no transcript of that hearing appears in the record provided to this Court, it appears that respondent was present for this hearing. In June 2014, respondent pleaded to the allegations in the petition that a search of his home had yielded marijuana, a scale, and syringes, that he had tested positive for marijuana in March 2014, that he had tested positive for heroin, hydromorphone, and morphine in April 2014, that he had used drugs while he cared for the children, that on April 9, 2014 he had been arrested on two felony warrants, and that he had received a term of probation. Also in June 2014, the two children were placed with their paternal great-grandmother.

At a dispositional hearing on July 2, 2014, trial court ordered that respondent comply with a parent-agency agreement that required him to attend supervised parenting times, complete parenting classes, attend individual counseling, comply with the terms of his probation for the child abuse conviction, submit random drug screens, undergo a substance abuse assessment, and maintain a legal income source, phone service, and suitable housing. Respondent was not present at the hearing, although he was represented by counsel. Respondent had not contacted his counsel to explain why he would not attend the hearing.

After BMW's birth, petitioner filed a supplemental petition in July 2014, incorporating the original allegations of the petition and additionally alleging that respondent was not compliant with the terms of his probation. BMW was removed from his parents' care and placed with his paternal great-aunt. The trial court ordered respondent to comply with a parent-agency agreement regarding BMW that required respondent to attend parenting times and random drug screens, and to complete individual counseling, parenting classes, and a substance abuse assessment.

Over the next several months, respondent failed to participate in substance abuse treatment, and did not attend any drug screens between April of 2014 and March of 2015. Respondent was jailed for two months in late 2014 for failing to report to his probation officer. Respondent was referred to individual therapy but failed to attend any sessions. Respondent did not maintain regular contact with petitioner or provide petitioner with any proof that he had obtained appropriate housing or legal employment, although he told the caseworker, Andrea Williams, that he was employed. Respondent inconsistently attended parenting times with JSW and KRW, and never attending parenting time with BMW. Respondent was arrested three times during this period for receiving and concealing stolen property, third-degree home invasion, and retail fraud.

The termination hearing was divided into separate "statutory basis" and "best-interest" hearings. The statutory basis hearing began in May 2015 and concluded in July 2015. Respondent was incarcerated at the time of the first hearings but was able to appear in person. Respondent had last visited JSW and KRW in January 2015 and had never visited BMW. The trial court heard testimony from JSW and KRW's great-grandmother that respondent had appeared intoxicated during some parenting-time visits. Williams testified that there appeared to be a bond between JSW and respondent, but not between respondent and the other two children. The great-grandmother also testified that she was not willing to adopt the children. Respondent had never completed any of the services required by his parent-agency plan. Respondent

admitted that he was aware that he needed to complete drug screens but that he avoided them because he was using heroin. He admitted to using heroin daily at least through March 2015, and to regularly using crack cocaine and prescription narcotics. Respondent expressed a desire to get off drugs, but admitted that he had never sought drug treatment.

The trial court found that petitioner had provided clear and convincing evidence that statutory grounds existed for the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that lead to adjudication continue to exist), (g) (failure to provide proper care or custody) and (j) (reasonable likelihood of harm if the children are returned to the home).

At the best-interest hearing, Williams testified that no bond existed between respondent and BMW, and that BMW's great-aunt had expressed a willingness to adopt him. Williams testified that no bond existed between respondent and KRW, but that a bond existed between respondent and JSW. No potential relative placements existed for JSW and KRW and their great-grandmother was not willing to adopt them. Williams testified that the children had more stable placements in foster care than they had with respondent. Williams opined that termination would serve all of the children's best interests in light of respondent's failure to address his substance abuse and other parental shortcomings, and the stability and permanency that termination would give the children. Respondent was jailed for the retail fraud charge, and Williams did not know the current status of other pending charges against him. Respondent testified that he loved his children, and stated that he would participate in substance abuse treatment and had attended some Narcotics Anonymous meetings while in jail. Dr. Bernard Gaultier, a psychologist, evaluated respondent in August 2015. Gaultier testified that respondent had "no significant psychiatric, psychological or behavioral difficulties," but had a "propensity toward drug and alcohol abuse." Gaultier testified that respondent offered no explanation or insight into his failure to participate in substance abuse treatment. Gaultier opined that respondent's lack of participation in substance abuse treatment up to that point did "not bode well for future compliance."

The trial court found that termination of respondent's parental rights was in the children's best interests, and issued an order terminating respondent's parental rights to all three children. This appeal followed.

## II. DUE PROCESS

Initially, respondent asserts that the trial court and petitioner violated his right to due process by failing to clarify what goals he had to achieve to obtain reunification with the children. Because respondent did not preserve this claim of constitutional error by objecting below, we review it for plain error affecting substantial rights. *In re Williams*, 286 Mich App 253, 274; 779 NW2d 286 (2009).

Procedural due process generally requires that a party receive a meaningful "opportunity to be heard," and reasonable notice of the opportunity to appear at the hearing. *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (quotations and citations omitted). In light of the fundamental nature of a parent's rights to parent his or her children, Michigan court rules and statutes contain provisions designed to protect the parent's right to due process in child protective proceedings. *Id*. at 91-102.

In support of his argument, respondent cites a portion of MCL 712A.18f[3] indicating that a parent-agency plan shall include the "[e]fforts to be made by the child's parent to enable the child to return to his or her home." Respondent contends that petitioner failed to adequately explain to him the components of his treatment plan. We disagree.

Respondent notes that he did not appear at the July 2014 dispositional hearing regarding JSW and KRW, and never signed the treatment plan. However, the record discloses that he was represented by counsel at the hearing. Further, respondent had notice of the treatment plan components. At the November 2014 dispositional hearing regarding BMW, respondent admitted that on July 2, 2014, petitioner had "offered [him] services as part of court ordered treatment plan to rectify conditions of drug abuse," and that "the services included substance abuse treatment, therapy, and parenting classes and [he] did not complete . . . those services successfully." On November 3, 2014, at a hearing attended by respondent, the trial court again ordered the same treatment plan it had ordered on July 2, 2014. Furthermore, Williams testified that she had made many referrals for the services in respondent's treatment plan, and had informed respondent about all of the referrals.

Respondent appeared at the majority of the hearings in this case and was represented by counsel at every hearing. Respondent testified that he intentionally had foregone many of the offered services and hearings because he preferred to use illegal drugs. Simply put, respondent knew, at a minimum, that ceasing to use illegal drugs and refraining from criminality were a large part of his parent-agency plan. We therefore find no plain error affecting substantial rights with respect to respondent's claim that he was not adequately informed of the necessary requirements for achieving reunification with the children. *In re Williams*, 286 Mich App at 274.

---

[3] MCL 712A.18f provides, in relevant part:

> (1)    If, in a proceeding under section 2(b) of this chapter, an agency advises the court against placing a child a child in the custody of the child's parent, guardian, or custodian, the agency shall report in writing to the court what efforts were made to prevent the child's removal from his or her home or the efforts made to rectify the conditions that caused the child's removal from his or her home. The report shall include all of the following:
>
> *   *   *
>
> (3)    The case service plan shall provide for placing the child in the most family-like setting available and in as close proximity to the child's parents' home as is consistent with the child's best interests and special needs. *The case service plan shall include*, but is not limited to, the following:
>
> *   *   *
>
> (b)    *Efforts to be made by the child's parent to enable the child to return to his or her home*. [Emphasis added.]

### III.  STATUTORY GROUNDS FOR TERMINATION

Respondent also argues that the trial court erred in determining that statutory grounds for termination had been proven by clear and convincing evidence.  We disagree.  The petitioner bears the burden of proving a statutory ground for termination by clear and convincing evidence.  MCL 712A.19b(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000).  We review for clear error a trial court's decision regarding statutory grounds for termination.  MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357.  A trial court's decision is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made."  *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).  We "give deference to the trial court's special opportunity to judge the credibility of the witnesses."  *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

The trial court did not err in finding that clear and convincing evidence supported the termination of respondent's parental rights to the children under MCL 712A.19b(3)(c)(*i*), (g), and (j).

### A.  MCL 712A.19b(3)(c)(*i*)

A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if the evidence clearly and convincingly establishes:

> The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*)  The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Approximately 12 months had elapsed since the trial court's entry of the initial dispositional order in July 2014.  Clear and convincing evidence established that the conditions leading to the children's June 2014 and November 2014 adjudications continued to exist in July 2015.  Williams testified that she had referred respondent for two parenting classes, but he failed to complete either session.  Respondent did not participate in a substance abuse assessment or attend a single drug screen, and never offered any explanation for his failure to participate.  Williams advised respondent of a referral for individual therapy, but he failed to attend any sessions.  Respondent was incarcerated for failing to report to his probation officer.  Other criminal charges, including receiving or concealing stolen personal property and retail fraud, remained pending against respondent.  Respondent maintained poor contact with petitioner and at the time of the termination hearing had not contacted Williams since early January 2015.  Respondent never provided documentation related to legal employment or proper housing for the children.  Respondent testified that he had ignored most of the services offered by petitioner because he preferred to use drugs.

Respondent's primary issue that led to adjudication and barred reunification with his children was substance abuse.  Respondent utterly failed to take a single step towards addressing this issue, despite his testimony that he was willing to do so.  This issue still existed at the time

of the termination hearing. In light of respondent's minimal (at best) progress, no reasonable likelihood existed that respondent would rectify his substance abuse issue within a reasonable time.[4] *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991); *In re LE*, 278 Mich App 1, 28; 747 NW2d 883 (2008).

## B. MCL 712A.19b(3)(g)

Pursuant to MCL 712A.19b(3)(g), a trial court may terminate a respondent's parental rights "if the court finds, by clear and convincing evidence," that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Contrary to respondent's contention, clear and convincing evidence established his failure to properly care for, protect, and supervise the children. *In re JK*, 468 Mich at 213-214. Respondent admitted that he left drugs, syringes, and other drug paraphernalia where they could be accessed by the children. He admitted to using drugs while caring for the children, and had various criminal charges pending against him. Clear and convincing evidence established that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time in light of the children's ages. *In re LE*, 278 Mich App at 28; *In re Dahms*, 187 Mich App at 648. As stated above, clear and convincing evidence established that, for more than a year, respondent had utterly failed to even participate in, much less benefit from, the services offered by petitioner, including the substance abuse treatment and drug screens designed to address his substance abuse issue. The trial court did not clearly err in finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(g).

## C. MCL 712A.19b(3)(j)

A trial court may terminate parental rights pursuant to MCL 712A.19b(3)(j) if the record evidence clearly and convincingly establishes that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Here, the record established that the event precipitating these proceedings involved a police raid of the parental home, the presence of drugs, syringes, and other drug paraphernalia, and respondent's admission that he had used drugs while caring for the children. Furthermore, clear and convincing evidence established that respondent had exhibited no benefit from the services offered by petitioner, including the substance abuse treatment and drug screens designed to address the primary concern regarding respondent, his substance abuse. *In re LE*, 278 Mich App at 28; *In re Dahms*, 187 Mich App at 644. The trial court did not err in

---

[4] Respondent suggests that the trial court placed undue emphasis on his incarcerations during the proceeding. A review of the record belies this suggestion. We also note that respondent cites no authority in support of his claim that, "[r]egarding (3)(c)(*i*) and (3)(g) the termination was premature because the children were placed with relatives." The trial court expressed awareness of the children's foster care placements with relatives, and did not clearly err in finding that, irrespective of the young children's potential placements with relatives, they could wait no longer for respondent to begin addressing his substance abuse issue.

concluding that a reasonable likelihood existed that the children might suffer emotional or physical harm if returned to respondent's custody. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

## IV. BEST INTERESTS

Lastly, respondent argues that the trial court clearly erred in finding that termination served the children's best interests. We disagree. "Even if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children. MCL 712A.19b(5)." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). In *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), this Court stated:

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Quotation and citation omitted.]

The trial court did not clearly err in finding that termination of respondent's parental rights was in the children's best interests. The trial court heard testimony that a bond existed between respondent and JSW, but that no bond existed between respondent and KRW, or respondent and BMW. Although respondent had exhibited a desire to parent his children, he failed to make any progress toward rectifying his substance abuse issue during the children's foster care placements. Gaultier testified that it was unlikely that respondent would seriously address his substance abuse and improve his parenting skills within a reasonable time. When the best interests hearing concluded, the two oldest children had spent more than 15 months in foster care, and the youngest child had spent his entire life in foster care. All three children were very young, and had strong needs for finality, permanency, and stability. *In re White*, 303 Mich App at 713. BMW's foster parents were willing to adopt him and, while JSW and KRW's current relative placement was not willing to adopt them, an adoption caseworker testified that if parental rights were terminated, the children could be placed in a pre-adoptive, non-relative foster home. We find no clear error in the trial court's determination that termination of respondent's parental rights was in all three children's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Mark T. Boonstra